DANIEL F. SULLIVAN *vs.* LAVINIA H. BELDING & others (and a companion case [1]).

Worcester.    April 9, 1942. — March 28, 1944.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, RONAN, & WILKINS, JJ.

*Landlord and Tenant,* Common stairway, Landlord's liability to tenant or his family or his invitee, Subtenancy.

No liability of the lessee of an entire building to a business visitor of a subtenant for personal injuries, sustained by slipping on a saucer-like depression which had long existed in a marble step of a common stairway in control of the lessee, was shown where there was no evidence of the time when the subtenant's tenancy began or of the condition of the step at any particular time before the injury.

TWO ACTIONS OF TORT. Writs in the Superior Court dated May 23, 1939, and July 15, 1941, respectively.

The cases were tried together before *Donnelly,* J.

The cases were argued at the bar in April, 1942, before

---

[1] The companion case was by Daniel F. Sullivan against George Andreson and another.

*Field*, C.J., *Donahue, Dolan, Cox*, & *Ronan*, JJ., and after the retirement of *Cox*, J., were submitted on briefs to *Lummus, Qua*, & *Wilkins*, JJ.

*Nunziato Fusaro*, for the plaintiff.

*G. R. Stobbs* & *L. E. Stockwell*, for the defendants, submitted a brief.

Lummus, J. In these actions of tort for bodily injuries alleged to have been caused by negligence of the defendants, the defendants rested at the close of the evidence for the plaintiff, and the judge directed verdicts for the defendants. The exceptions of the plaintiff to that direction present the only question in these cases.

The defendant Belding and her codefendants on December 18, 1937, owned a five story business block at 112 Front Street in Worcester. The whole building had been leased by them on April 1, 1923, to the defendants in the second case, George Andreson and Charles Andreson, who were interested in a store on the fourth floor. They occupied that store, and sublet various parts of each floor to a number of tenants. As lessees they were on December 18, 1937, in control of the common stairway, leading from the entrance at the street level to the second floor of the building. The stairway was built before 1911 and existed when the lease was given. The Andresons did not contend that any repairs had been made on it prior to December 18, 1937.

Evidence for the plaintiff tended to prove the following facts. On December 18, 1937, the plaintiff went to see one Morse of the Harry F. Morse Company, a manufacturer of aprons with a place of business on the fourth floor. That company was a tenant of the Andresons. He went to see Morse as a favor to one Mattimore, to leave an order from Mattimore to Morse for some aprons. After he had seen Morse and had left the order, he started down the stairs to reach the street. As he reached the twelfth step from the top of the stairway from the second floor to the street, wearing heavy rubbers and walking about twenty inches from a hand railing that was on his right, his "whole left foot slipped" on the marble tread, and he "fell backwards and hit his head," fracturing his skull.

The marble tread was eleven inches wide and one and three quarters inches thick. But beginning ten or eleven inches from the railing, and extending thence to his left for two feet, the tread had been worn into a rounded saucer-like depression, had been worn down three quarters of an inch, had been worn off toward the edge on a slope, and the edge had become rounded or "bevelled." Where the tread had been worn it was very smooth and slippery. A photograph substantiated this description. The plaintiff was familiar with the stairway, and had observed the condition just described for at least ten years before December 18, 1937.

The plaintiff's further description of the tread as "wet, muddy and greasy" shows what may have been only a transient condition due to the use of the stairway by persons coming in from the street on a rainy day, as that day was. The plaintiff does not rely upon that condition in argument.

We see no evidence of control on the part of the defendant Belding and her codefendants, and therefore no case against them. The plaintiff does not contend that the direction of a verdict in their favor was erroneous.

As to the Andresons, their duty to the plaintiff was simply to use reasonable care to keep the stairway for the use of the Harry F. Morse Company and its business visitors in as good a condition as that in which it was or appeared to be at the time of the letting to that company. *Sneckner* v. *Feingold,* 314 Mass. 613. *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203. *Bacon* v. *Jaques,* 312 Mass. 371, 373. *Story* v. *Lyon Realty Corp.* 308 Mass. 66. What that time was, did not appear. Although that company had been located in that building for thirty years, the tenancy under which it held on December 18, 1937, may well have begun within ten years before the injury. Yet the plaintiff admitted that for ten years before the injury the condition of the stairway had not changed materially. No evidence not herein stated showed the condition of the stairway at any particular time. The judge was right.

*Exceptions overruled.*