MARION S. UNDERHILL *vs.* ARTHUR SHACTMAN & others, trustees, & another.

Suffolk.    April 8, 9, 1958. — June 24, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Tenant's liability to third person, Landlord's liability to third person, Shopping center. *Negligence,* Invited person, One owning or controlling real estate, Contributory, Shopping center, Parking space. *Evidence,* Relevancy and materiality.

A lessee of one of the stores in a shopping center was not liable for injuries sustained by a customer in a fall caused by the condition of a common parking area available for the use of the lessee's customers and of the customers of the other stores in the center where the lessor under the lease had the "duty to maintain and take care of the common . . . parking areas," even though the lessee had the right to supply extra parking attendants and the duty to carry insurance covering persons injured "in or about the [demised] premises." [733]

Evidence that the owner of land built a shopping center thereon in full view of and so as to attract attention from a much traveled highway, built access driveways and parking areas for stores of many types constructed in the center, erected a sign directing attention to the center and the location of its entrance, marked lines for parking automobiles and hired parking attendants, and leased the stores to various tenants under leases such that a large volume of business done in the stores would entitle the owner to a greater rental warranted a finding that the owner for his own purposes invited the public to enter the center and park in the designated parking areas in order to patronize the stores. [734]

A finding of negligence on the part of the owner of a shopping center toward a prospective customer of one of the stores therein, an invitee of the owner, with respect to the manner in which he maintained a parking area under his control was warranted by evidence that a parking stall was marked on the pavement of the parking area beside a retaining wall whose top was one foot wide, about one foot high above the stall, and several feet above ground on its outside and had no railing or other protective device, and that in darkness the customer stepped "sideways and backwards" out of an automobile parked in the stall onto the top of the wall and fell off the wall; and a ruling that the customer was guilty of contributory negligence was not required. [734–735]

At the trial of an action for injuries sustained in an accident at night, evidence as to the lighting at the place of the accident five years after it occurred would not be admissible in the absence of evidence that there had been no change in the lighting there in the intervening period. [735]

TORT. Writ in the Superior Court dated August 9, 1951. The action was tried before *Dowd,* J.

*Edwin R. Trafton,* (*William J. Ryter* with him,) for the plaintiff.

*John F. Finnerty,* for the defendants Shactman and others.

*James D. Casey,* for the defendant Federated Department Stores, Inc.

SPALDING, J. The plaintiff brought this action of tort for personal injuries against Arthur Shactman and others, hereinafter called the trustees, and Federated Department Stores, Inc., doing business as Filene's and hereinafter called Federated. The declaration contained a count for negligence and one for nuisance against the trustees and Federated but we are concerned only with the negligence counts as the plaintiff does not now press the nuisance counts. At the close of the evidence verdicts were directed for the defendants and the case comes here on the plaintiff's exceptions to this action and on certain exceptions of the defendants to rulings on evidence. If the verdicts ordered for the defendants are to stand the defendants waive their exceptions.

There was evidence of the following: The trustees own the so called Chestnut Hill Shopping Center, which is located partly in Brookline and partly in Newton. The center consists of a number of stores which are leased to various tenants. Surrounding these stores is a parking area. Federated occupies one of the buildings of the center under a written lease. The lease provides for a minimum rental and an additional rental based on a percentage of Federated's receipts. Under the lease Federated had the right, in common with the other tenants of the center, to have the parking areas and the passageways leading to and from the areas and stores available for the use of its customers. The trustees had the "duty to maintain and take care of the common passageways and parking areas." This included the duty to maintain lights, remove snow and ice, and furnish at least one parking attendant. Federated together with other tenants had a right, with respect to the parking areas and passageways, to employ additional parking attendants.

.

. On December 22, 1950, the plaintiff, aged seventy-three, was driven to the center by her daughter in order that she might do some shopping at Federated's store. The daughter drove into the center at the Hammond Street entrance where the trustees had erected and lighted a sign reading "Chestnut Hill Shopping Center — Enter" and parked her automobile in one of the stalls marked on the pavement. This stall (No. 4) was along one edge of the driveway leading to the parking area. Along this side of the driveway .was a retaining wall one foot in thickness which ran from Hammond Street into the parking area, a distance of about one hundred seventy-five to two hundred feet. Opposite stall No. 4 the wall rose eleven and one half inches above the grade of the driveway and the distance from the top of the wall down to the adjoining property was four feet eight inches. There was no railing or other protective device along the top of the wall. This condition, it seems, had obtained since the commencement of Federated's tenancy.

The plaintiff's daughter parked the automobile so that its right side was parallel with and a few inches away from the retaining wall. The weather was cloudy and it was about half an hour after sunset; it was dark or almost dark.

The evidence as to lighting of the driveway was conflicting. The plaintiff's daughter testified that she "did not think there were any lights along the side of the driveway . . . and she didn't see any." The plaintiff testified that the area where the automobile was parked was not lighted.

The plaintiff testified that after the automobile was parked and the headlights were turned off she opened the right door to get out. "Before stepping out she looked . . . [and] saw a curbstone . . . [and] then stepped out of the motor vehicle sideways and backwards at a 45° angle to the car and wall with both feet 'onto the curbstone' (actually the top of the wall)." That is the last that she remembers. She "saw something jutting up about a foot" but "did not see a sidewalk to the right of what she saw," as she did not look. Just as the plaintiff's daughter came around from the back of the automobile she saw her mother falling over the

wall. From this fall the plaintiff sustained injuries from which this action arose.

1. With regard to Federated, there was no error in directing a verdict. Admittedly the passageways and parking area here involved were maintained for the benefit of Federated and the other stores in the center, but it is clear from the terms of the letting that the control of these areas at all times here material was in the trustees. And this is none the less so despite the facts that Federated had the right to supply extra parking attendants and the duty to carry insurance covering persons injured "in or about the [demised] premises." "It is elementary that liability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise." *Frizzell* v. *Metropolitan Coal Co.* 298 Mass. 189, 191. *Nichols* v. *Donahoe,* 309 Mass. 241, 242. *Brazinskos* v. *A. S. Fawcett, Inc.* 318 Mass. 263, 265. *Nunan* v. *Dudley Properties, Inc.* 325 Mass. 551, 553.

2. The directed verdict for the trustees raises more difficult problems. Under our decisions the duty of the landlord who lets to several tenants, retaining control of common approaches, is to use reasonable care to maintain these approaches in as good condition as they were in or appeared to be at the time of the letting to the tenant. *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203, 205. *Sullivan* v. *Belding,* 315 Mass. 701, 703, and cases cited. The trustees argue that this rule absolves them from responsibility for any damage caused by a dangerous condition of the sort here involved which was in existence at the time of the letting to Federated. Doubtless if this rule is applicable the trustees would not be liable (*Andrews* v. *Williamson,* 193 Mass. 92), but we do not believe that this rule governs here.

The background of this rule was fully explored in *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170. The court noted in that case that there may be cases "in which the landlord goes beyond the mere retention of control of common passageways and does extend an invitation on his own

account for his own purposes" (p. 173).  We think that this is such a case.  We are of opinion that a jury could reasonably find from the nature of the business and the manner in which it was conducted that the trustees had for their own purposes extended an invitation to the public to visit the center.  The trustees have built a shopping center and have brought together many types of stores in order to provide a central shopping place for persons within a wide radius. The success of the venture depends on the ability of the trustees and their tenants to attract customers to the center. A heavy volume of business done by the tenants will mean greater rental for the trustees.  It would be natural, therefore, to expect the trustees to take steps to attract persons to the center.  And we think that it could be found that they have taken such steps.  The buildings were placed in full view of a much traveled highway (Route 9), and were built so that they would attract attention.  They were arranged so that they would be easily accessible to the auto-borne customer.  Parking lots were built adjacent to the stores and several driveways were built to afford access from the highway.  At one entrance, at least, the trustees erected a sign directing attention to the center and the location of the entrance.  Lines were marked on the pavement of the parking area and attendants hired by the trustees to facilitate parking.  A jury, considering these acts together with the trustees' need to attract customers, could find that there was an invitation from the trustees to the public to enter the center and park in the designated parking area in order to patronize one or more of the stores in the center.

We think, moreover, that there was sufficient evidence for the jury of negligence on the part of the trustees in the manner in which they maintained the parking area.  The defendants' duty to invitees is "to use reasonable care to keep the premises in a reasonably safe condition for such persons' use according to the invitation, or at least to warn them against any dangers attendant upon this use which were not known to them or obvious to any ordinarily intelligent person and either were known or in the exercise of

reasonable care ought to have been known to the defendants." *Kelley* v. *Goldberg*, 288 Mass. 79, 81. The trustees knew that automobiles would park beside the wall; they had marked the pavement for that purpose. They also knew that persons would park there when the center was open in the nighttime. A jury could find that the trustees should have foreseen that in the darkness a person might alight from an automobile onto the retaining wall unaware of its narrowness and the sharp drop beyond, and that they should have taken some measure to make the place safe, either by putting up a protective railing, or by giving adequate warning.

Whether the plaintiff was in the exercise of due care was a question of fact for the jury. And it cannot be said as matter of law that the danger in which the plaintiff was placed was such as to be obvious to any ordinarily intelligent person. See *Kelley* v. *Goldberg*, 288 Mass. 79. Compare *Flynn* v. *Cities Service Refining Co.* 306 Mass. 302.

3. One point remains. The trustees have argued that certain evidence of a witness called by the plaintiff should not have been admitted. This witness described the lighting in the parking area five years after the accident. He had no knowledge of the lighting at the time of the accident, and there was no showing that the lighting had remained unchanged in the interim. Since our conclusion that the plaintiff was entitled to go to the jury would have been the same apart from this evidence, it is unnecessary to pass on this exception. But inasmuch as the question may arise at a second trial, we think it proper to say that unless it appears that there had been no change in the illumination in the intervening period, the evidence ought not to be admitted.

4. With respect to Federated, the plaintiff's exceptions are overruled and Federated's exceptions are dismissed; with respect to the trustees, the plaintiff's exceptions are sustained and the defendants' exceptions are overruled.

*So ordered.*