MANUEL C. LEONARDO, executor, *vs.* THE GREAT ATLANTIC AND PACIFIC TEA COMPANY
(and a companion case[1]).

Bristol.   December 9, 1959. — March 7, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Control of premises, Tenant's liability to third person, Landlord's liability to third person, "Outside" portion of premises, Store, Parking space, Construction of lease. *Negligence,* One owning or controlling real estate, Store, Parking space, Contributory. *Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

In a lease of a store and of an adjacent parking lot paved by the lessor, provisions that the lessee should have the right to use "all available outside wall and roof space" for advertising by signs or billboards, and that "the lessee is to assume only such degree of control of the

---

[1] The companion case is by the same plaintiff against Simie Beserosky.

outside part of the premises so used, as is necessary for the installation and maintenance of said signs or billboards, and the lessor is understood to retain and remain in possession of control of said outside portions of the premises for all other purposes and in connection with determining his liability to third persons for any and all injuries which may result from defects, failure to repair, or accumulations of snow and ice," dealt with control of the outside of the building itself and not with control of the parking lot, which passed to the lessee with the demise of the parking lot, notwithstanding a further provision that the pavement of the parking lot would be maintained by the lessor; and the lessee had a duty to a business invitee to exercise due care to keep the parking lot in a reasonably safe condition for the invitee's use. [453–455]

A finding of negligence on the part of the proprietor of a store, in control of a paved parking lot adjacent thereto, toward a prospective customer was warranted by evidence that the lot was divided into east and west parts by a retaining wall having on its west side a uniform height of sixteen inches and the appearance of a curbing, that the west part of the parking lot was higher than the east part and had no parking lines or signs warning against parking near the wall, that there were no guard rails on the wall, and that one rainy morning as the customer got out of an automobile parked in the west part of the parking lot three feet from the wall she took one or two steps backward, the back of her leg struck the wall, and she fell over it into the east part about four feet below; and a ruling that the customer was guilty of contributory negligence was not required. [455]

Two ACTIONS OF TORT. Writs in the Superior Court dated May 5, 1955, and May 19, 1955.

The actions were tried before *Smith*, J.

*William A. Torphy*, (*Chris Byron* with him,) for the plaintiff.

*Francis D. Mone*, for the defendant Beserosky.

*Gerald P. Walsh*, for the defendant The Great Atlantic and Pacific Tea Company.

SPALDING, J. The original plaintiff in these actions of tort was Mary L. Soares and she will be referred to hereinafter as the plaintiff.[2] The defendants are The Great Atlantic and Pacific Tea Company (hereinafter called A & P), and Simie Beserosky. At the conclusion of the evidence the judge granted A & P's motion for a directed verdict, subject to the plaintiff's exception. A similar

---

[2] After the trial Mary L. Soares died and her executor was substituted as party plaintiff.

motion presented by the defendant Beserosky was denied and the case was submitted to the jury who returned a verdict for the defendant. The cases come here by report and the questions presented are whether the judge erred (1) in directing a verdict for A & P and (2) in charging the jury in the case against Beserosky.

There was evidence of the following: A & P was the tenant of Beserosky under a written lease dated February 25, 1954. The premises involved were located at the corner of Acushnet Avenue and Coffin Avenue, New Bedford, and consisted of a building to be used for a store, and an adjacent parking lot. The parking lot was divided into two parts (east and west) by a stone and cement retaining wall, the west part being at a higher elevation than the east part. The retaining wall began at Coffin Avenue and ran up to the store's loading platform, a distance of approximately fifty feet. Along the west side the wall was of the same height (sixteen inches) all the way, and to one entering the premises on that side it had the appearance of a cement curbing. The height of the wall on the east side was one foot ten inches at Coffin Avenue and at the loading platform five feet five inches.

On April 17, 1954, at 10:30 A.M. Manuel C. Leonardo, accompanied by his sister, the plaintiff, drove his automobile to A & P's store where both intended to purchase some groceries. It was raining when they arrived. Leonardo drove into the higher or west portion of the parking lot and parked his automobile three feet from the retaining wall. On the east lot there were painted white lines indicating where vehicles could be parked. On the west lot, where Leonardo parked, there were no parking lines and the area along the retaining wall was directly in front of two doors which opened onto the loading platform. There were no no-parking signs in this area, and there were three signs on the rear of the building facing the west lot bearing the legends "Free Parking for A & P Customers."

As the plaintiff got out of the automobile she took one or two steps backward and then the back of her right leg struck the retaining wall causing her to fall over the wall into the

east lot which was about four feet below. The plaintiff sustained serious injuries.

The pivotal question is whether the parking lot was under the control of the tenant, A & P, or the lessor, Beserosky. If it was under A & P's control the directed verdict in its favor cannot stand. "[L]iability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise." *Frizzell* v. *Metropolitan Coal Co.* 298 Mass. 189, 191. *Hannon* v. *Schwartz*, 304 Mass. 468, 470. *Nunan* v. *Dudley Properties, Inc.* 325 Mass. 551, 553. *Underhill* v. *Shactman*, 337 Mass. 730, 733.

To determine the issue of control it becomes necessary to examine the lease. The lease expressly demised both the store and the parking lot (comprising the east and west portions) to A & P. Thus, unless some other provision in the lease modifies the extent of the interests granted, A & P would have control of the parking lot. *Nichols* v. *Donahoe*, 309 Mass. 241, 243.

A & P argues that under the provisions of a rider attached to the lease the control of the parking lot was in the lessor. The rider provides: "It is also further agreed that the lessee's rights and interest under the within lease include that of using all available outside wall and roof space for the purpose of advertising its own and allied products; such right to include the erection of suitable advertising billboards when necessary. It is . . . agreed and understood as a part of this covenant that the lessee is to assume only such degree of control of the outside part of the premises so used, as is necessary for the installation and maintenance of said signs or billboards, and *the lessor* is understood to retain and remain *in possession of control of said outside portions of the premises for all other purposes* and in connection with determining his liability to third persons for any and all injuries which may result from defects, failure to repair, or accumulations of snow and ice" (emphasis supplied).

A & P argues that the rider gave it a limited degree of control for advertising purposes over the outside of the

premises (that is, the walls and roof of the store) and that the lessor retained control over the remaining outside portions of the premises, including the parking lot. This contention can be sustained only by reading the phrase "said outside portions of the premises" in the rider as including the parking lot. But we are of opinion that these words refer back to the earlier phrase in the rider, "outside part of the premises so used," which in turn refers to the clause which gives A & P the right to use "all available outside wall and roof space for . . . advertising." In other words, the rider deals with the control of the outside of the building itself and not the parking lot. Portions of the outside of the building can be used by the tenant for advertising purposes and that part of the outside that is not so used remains under the lessor's control. This construction is more consonant with the probable intention of the parties. A lease whereby a demise of a parking lot is granted to the tenant in one clause and in another the landlord is to retain "possession of control" of it for all purposes other than the tenant's advertising would be most unusual. We are of opinion that the demise of the parking lot to A & P carried with it the control customarily incidental to such a demise. To be sure, the lease after reciting that the parking lot had been paved by the lessor, went on to provide that it would be "maintained by her." But this did not have the effect of placing the parking lot under the lessor's control. It was a limited control for the purposes of maintenance of the pavement.

A & P relies on *Nunan* v. *Dudley Properties, Inc.* 325 Mass. 551, where one of its leases containing a clause identical to the one here was before the court. The question was whether a flight of wooden steps extending from the rear of the leased building was under the control of the landlord, and it was held that by virtue of the same provisions as are contained in the rider the control of the steps was in the landlord. No question as to whether those provisions were broad enough to include portions of the premises not part of the building was involved. That case, therefore, is not controlling.

Since, as we hold, A & P was in control of the parking lot, it owed to the plaintiff, a business invitee, "the duty to use reasonable care to keep the premises in a reasonably safe condition for the . . . [invitee's] use." *Schallinger* v. *Great Atl. & Pac. Tea Co.* 334 Mass. 386, 390. Whether A & P discharged that duty was a question of fact for the jury. The automobile in which the plaintiff was riding was parked in an area in which parking was permitted, or so the jury could have found. On one side of this area was a retaining wall separating the east and west parking lots which had the appearance of a curbing. At its highest point the west lot was about five feet higher than the east lot, and there were no guards or railing to protect one alighting from an automobile from falling over the top of the wall. The jury might have found that the failure of A & P to take these precautions or to warn against or to forbid parking near the wall was negligent. In this respect the case at bar closely resembles *Underhill* v. *Shactman,* 337 Mass. 730, 735. Whether the plaintiff was in the exercise of due care was a question of fact for the jury. *Underhill* v. *Shactman, supra.* It follows that it was error to direct a verdict in favor of A & P.

Since Beserosky did not have control of the parking lot there is no basis for imposing liability on her. Consequently the plaintiff was not harmed by the verdict in her favor and there is no need to consider the correctness of the charge. Nor need we determine whether the questions arising out of the charge are properly brought here by the report.

The verdict ordered by the court in the case against A & P is set aside and the case is to stand for trial in the Superior Court. The verdict returned by the jury in the case against Beserosky is to stand.

*So ordered.*