*Northern District*

#6850

**ROBERT G. WINDHEIM, et al**

**v.**

**SEARS ROEBUCK and COMPANY**

Argued: Nov. 20, 1968   Decided: Jan. 29, 1969

*Present:* Brooks, P.J., Parker, Yesley, J.J.
Case tried to *Farley, J.,* in the District Court
of Natick No. 12887 R314

*Brooks, P.J. This is an action of tort*
brought in the District Court of Natick, there-
after moved to the Superior Court by defen-
dant, then remanded to the District Court of
Natick for trial.

Robert G. Windheim seeks to recover for
property damage to his motor vehicle and for
consequential damage incurred by him on be-
half of his wife, Lillian R. Windheim.

Lillian R. Windheim seeks to recover dam-
ages for personal injuries received while riding
as a passenger in the above mentioned motor
vehicle.

The declaration states that defendant con-
structed and/or maintained its parking area
in Natick in a negligent and unsafe condition
causing an accident on March 16, 1966, whereby
plaintiffs were damaged. Defendant's answer
is general denial and contributory negligence.

The case was heard on February 15, 1967.
During the course of the trial Judge Farley
took a view of the locus of the accident. He
filed written findings of fact based on evidence
introduced at the trial over which there was

practically no dispute. As much of this evidence as is essential to an understanding of the issues involved is hereinafter recited.

The court entered a finding for plaintiff Robert G. Windheim under Count 1 for property damage in the amount of $125.00 and for plaintiff Lillian R. Windheim under Count 2 for personal injury in the amount of $2100.

It is stipulated that the parking lot in which plaintiffs were damaged was owned and controlled by defendant.

There was also introduced in evidence, a plan of defendant's property. This plan disclosed the following. Defendant's plant is located on the north side of Mass. Route 9 which runs roughly east and west. Set back approximately 400 feet from Route 9 and close to the western boundary of the property is defendant's main building. Another building of defendant, known as Auto Center, is located near the east boundary of defendant's property and close to Route 9. The distance from the Auto Center to defendant's western boundary is somewhat over 600 feet.

The parking lot in which occurred the accident is rectangular in shape and runs westerly from the Auto Center along Route 9. To the north of the parking lot is the main building of defendant and part of what appears to be another parking lot. Adjoining the western end of the parking lot, but not physically a part of it, running north from Route 9 is a

roadway belonging to defendant which serves as a passageway between Route 9 and defendant's main building and the parking lot in question. This entrance to the parking lot is at the northerly end of the roadway.

The roadway is separated from the parking lot by an island 4 to 5 inches wide and roughly 400 feet long. On each side of the island is a cement curbing. The space between the curbing is covered with dark wood chips. The curbing next to the roadway is painted yellow. The curbing next to the parking lot is the natural color of cement.

At either end of the island there are directional signals for motor vehicles using the roadway which were not visible to plaintiffs from the direction which they entered the parking area. Between the two signs at the end of this island were no other signs, reflectors, shrubbery or fences. The parking area has a smooth blacktop surface on which are painted yellow lines designating rows of parking stalls. These rows run parallel to the curbing which separates the parking area from the roadway.

The parking area was lighted by 15 light poles arranged in three rows approximately 135 feet apart, running in an east-west direction parallel to Route 9. There were five poles in each row approximately 122 feet apart. The nearest pole to the curbing was 50 feet east of it. Each light pole in the parking area was equipped with two 750 watt mercury-vapor

lamps. The lines on the blacktop surface designating rows of parking stalls were painted with paint approved by the Connecticut State Highway Department. West of the roadway is another large expanse of parking area intended for the use of customers of other stores adjacent to and west of defendant's land. In his finding the trial judge stated:

"During the twilight hours and the hours of darkness, the whole area presents itself as one continuous parking area."

There is one other entrance from Route 9 to the parking lot here involved, namely at the Auto Center. This is where plaintiff's car entered the parking lot after dark on March 16. The car was driven by Harriet Windheim, daughter of Robert G. Windheim, owner of the car who had given his daughter permission to drive for her own purposes, one of which was to shop at defendant's store. This was her first time in the parking lot. Robert Windheim was not in the car on this occasion. Another passenger in the car was Lillian Windheim, mother of Harriet. She was also intending to shop at defendant's store. Harriet's two sisters were in the rear seat.

Harriet testified that she did not see any signs, arrows or any devices directing the flow of traffic through the parking lot, and the judge found that there were none. She proceeded diagonally across the parking lot in a westerly direction at about 15 miles per hour and struck

the unpainted cement curbing which faced the parking area. She had not seen it prior to the accident.

Lillian Windheim, sitting in the front seat, was thrown forward and injured, and the car was damaged. She testified that she did not see the curbing until after the accident, although she did see the lines marking the individual parking spaces. The lights of the parking lot were on, as were the headlights of the automobile. There were no obstructions in the parking area outside of the light poles. There were few vehicles in the area so that plaintiff's car could proceed diagonally from one end of the parking lot to the other without collision.

Defendant filed 23 requests for rulings. It claims to be aggrieved by the court's denial of ## 14, 16, 17, 19, 21, 22. These six requests were as follows:

14. Dividing curbs are incidental to the ordinary and common construction of parking lots and are structures the plaintiff should have expected to find in the parking lot involved. *Brooks* v. *Sears, Roebuck & Co.*, 302 Mass. 184 (fall over a curb timber in parking lot).

16. There is no evidence sufficient to warrant a finding that the parking lot was not constructed or maintained in a reasonably safe condition.

17. There is no evidence sufficient to war-

rant a finding that the parking lot was not adequately lighted.

19. There is evidence sufficient to warrant a finding that the defendant maintained the parking in reasonably safe condition and that the lighting of the parking lot was adequate.

21. The evidence indicates that the defendant was making reasonable use of its premises consistent with its business.

22. There is no evidence to warrant a finding for the plaintiff.

The above requests were disposed of as follows:

14. Denied. All dividing curbs in all parking lots under all circumstances need not be anticipated by invitees.

16. Denied. The Court finds sufficient evidence that the parking lot was not maintained in a reasonable safe condition at the time of the accident.

17. Denied.

19. Denied. I find as a fact that the parking lot was not in a reasonable safe condition.

21. Denied.

22. Denied. Contrary to the facts found.

The defendant did not object to the disposition of request #23 which read:

23. There is evidence to warrant a finding for the defendant. Allowed, but I find the plaintiffs were at all times in the

exercise of due care and that the defendant was not.

"Plaintiffs were business invitees to whom defendant owed a duty "to use ordinary care and diligence to keep the parking space in a reasonably safe condition, having regard to its construction, the purposes for which it was arranged, and the customary conduct of the defendant's invitees who made use of it." *Brooks* v. *Sears Roebuck & Co.*, 302 Mass. 184, 186.

The above case was cited by defendant in support of its contention that there was nothing wrong with defendant's parking lot in the present case. There are two important differences, however. In the *Brooks* case the court found that plaintiff could see perfectly well. The time was between 4 and 5 P.M. In our case the time was 7:20 P.M. The judge found it was after dark and that no one in the plaintiff's car saw the barrier which plaintiff's car ran into. In the present case the judge took a view of the premises, while in the *Brooks* case there is no evidence of any view by the jury, and the premises and the problem generally were quite different in the two cases.

The duty to keep the premises reasonably safe, as stated in *Brooks* v. *Sears Roebuck & Co.*, is the same duty referred to in *Leonardo* v. *Great Atlantic & Pacific Tea Co.*, 340 Mass. 450, 455, also involving a parking area casualty. The Court, in the *Leonardo* case, said:

> "Since, A & P was in control of the parking lot, it owed to the plaintiff, a business invitee, 'the duty to use reasonable care to keep the premises in a reasonably safe condition for the ... [invitee's] use.' *Schallinger* v. *Great Atl. & Pac. Tea Co.,* 334 Mass. 386, 390 Whether A & P discharged that duty was a question of fact for the jury." See also *Underhill* v. *Schactman,* 337 Mass. 730, 735.

The "jury," that is to say, the judge in this case has found as a fact after personal view of the premises that defendant has failed in its "duty" to keep its parking area reasonably safe. Specifically, for example, it might have made more plainly visible the easterly curbing which plaintiff's car ran into. This could have been accomplished by appropriate paint or by more powerful illumination of that particular area.

This leads to the final question. Was the judge's finding of negligence on the part of defendant and lack of negligence on the part of plaintiff's operator so plainly wrong as to require its reversal? *Barnum* v. *Fay,* 320 Mass. 177, 180 and cases cited on page 180. See also *Younker* v. *Pacelli,* 354 Mass. 738, 741, where the court says:

> "This case is particularly one for adherence to the principle long recognized on appeal that findings on oral testimony by a judge who has seen and heard the

witnesses will not be reversed unless plainly wrong.''

The present case particularly calls for an adherence to this principle, the only important difference being that here the judge bases his findings not on his appraisal of contradictory oral testimony, but on his interpretation of physical facts personally observed by him.

Our conclusion is that there was no error in the court's denial of requests for rulings ## 14, 16, 17, 19, and 22. The request for ruling #21 seems to us to be irrelevant to the issue. Moreover, the request is for a finding of fact which may properly be denied. **Report dismissed.**

JOHN F. SULLIVAN
  for the plaintiff
DONALD A. MACKSEY
  for the defendant