Sikora, J.
INTRODUCTION
On October 19, 1995, the plaintiff, Jane M. Carey, filed a complaint against the defendants, Paxton Post 306, The American Legion, Inc. (Paxton Post) and Weight Watchers North America, Inc. (Weight Watchers), for negligence. On February 14, 1997, this matter came before the Court for hearing on the motions for summary judgment of Paxton Post and Weight Watchers. For the reasons discussed below, the court ALLOWS Weight Watchers’ motion for summary judgment and DENIES Paxton Post’s motion for summary judgment.
*166 BACKGROUND
The following undisputed facts emerge from the pleadings, discovery results, and affidavit materials.
On November 24, 1992, the plaintiff attended a Weight Watchers meeting at the Paxton Post, located at 885 Pleasant Street, Paxton, Massachusetts. As a tenant at will, Weight Watchers rented space at the facility from the Paxton Post for one night a week for two hours. There was no written agreement between Weight Watchers and the Paxton Post regarding the tenancy. Moreover, the parties had no written contract setting forth which party was required to maintain the parking lot area at the Paxton Post.[2]
The plaintiff arrived at the Paxton Post at approximately 5:15 p.m. At this time, the sun had gone down and it was beginning to get dark. Since the upper parking lot was full, the plaintiff parked in the lower parking lot. She left the car, walked along the side of the Paxton Post building and up a slope which led to its front entrance. Although the dusk was overcast, the plaintiff maintains that there was enough natural lighting to allow her to make her way to the entrance.
The Weight Watchers meeting ended at approximately 6:00 p.m. At the conclusion of the meeting, the plaintiff left the building with other patrons of Weight Watchers. As she proceeded to her motor vehicle, she walked along the side of Ms. Paula Lauricella, and retraced the path to her vehicle. Since it was dark, the plaintiff held on to Ms. Lauricella’s arm as they walked down the slope to the lower parking level.[3] As the two women proceeded, the plaintiff slipped and fell to the ground. She attributes the causes to the dark condition and the wet leaves in the area of her fall.
DISCUSSION
I. Summary Judgment Standards
Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and of establishing “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 808, 809 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party then must respond by articulating specific facts which establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
II. Weight Watchers’ Motion for Summary Judgment
In support of its motion for summary judgment, Weight Watchers argues, inter alia, that it exercised no control over the parking area where the plaintiff fell and, therefore, that it owed no duty of care to the plaintiff.
A. The Pertinent Law
In the context of a lease for commercial purposes, a landlord has a duty to keep the premises in a safe condition, with attendant liability if he does not, “[o]nly if (1) he has undertaken so to do under the terms of the lease or (2) the location of the defect that caused injury was in a common or other area appurtenant to the leased premises ‘over which the [landlord] had some control.’ ” Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975 (1995) quoting Chausse v. Coz, 405 Mass. 264, 266 (1989). Camerlin v. Marshall, 411 Mass. 394, 397 (1991). A tenant is responsible for keeping the premises safe, absent a contractual undertaking to the contrary by the landlord if the tenant occupies the entire premises. Id. (Citations omitted.) “The lease of an appurtenant parking area for the exclusive use of the tenant who occupies the entire building served by that area carries with it responsibility for keeping such an area safe, unless the lease directs otherwise.” Id. citing Leonardo v. Great Atl. & Pac. Tea Co., 340 Mass. 450, 453-55 (1960).
Under the Massachusetts law, “ [liability for damage caused by the condition of premises commonly depends upon control of the offending instrumentality, either through ownership or otherwise.[4] Leonardo v. Great Atlantic & Pacific Tea Co., 340 Mass. 450, 453 (1960) (citations omitted). In this case, Weight Watchers exercised no control over the parking lot, where the plaintiff slipped and fell. It did not own or rent the respective parking lot pursuant to an explicit lease.
Instead, the uncontested facts in the summary judgment materials establish that no written agreement exists between Paxton Post and Weight Watchers . Rather, Weight Watchers rents a room from Paxton Post for two hours a week as tenants at will. Since there is no formal contractual lease between Paxton Post and Weight Watchers for the court to consider in deciding the question of control, I must examine the parties’ conduct and practices. Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975 (1995) (stating that in circumstances of an uncertain lease between the landlord and the tenant, the motion judge correctly looked to the practices of the parties to determine whether the landlord exercised any control over the parking lot). Contrast Leonardo, 340 Mass. at 453-55 (stating that in determining the issue of control it is necessary to examine the lease which existed between the landlord and the tenant; holding that the commercial lessee was in control of the parking lot where the lease explicitly demised both the store and the parking lot to the lessee).
*167 The summary judgment materials establish clearly that Weight Watchers exercises no control over the outside lighting for the facility or the parking area. Paxton Post’s answers to the plaintiffs interrogatories state that the informal rental arrangement between Paxton Post and Weight Watchers imposed no specific maintenance duties on Weight Watchers. Rather, Edward Asselin and Henry Russell, maintenance persons for the Paxton Post, are said to be responsible for maintaining the building at the Paxton Post location. Mr. Asselin is responsible for letting the agents and/or patrons of Weight Watchers into the Paxton Post building on the nights when Weight Watchers holds meetings at the premises. Moreover, the Paxton Post has its driveway and parking lot plowed by an independent contractor for each snowfall.
Accordingly, the summary judgment record is devoid of any evidence that Weight Watchers exerted any control over maintenance or lighting for the premises or the parking area. Weight Watchers’ motion for summary judgment deserves allowance.
III. Paxton Post’s Motion for Summary Judgment
Paxton Post, also, rejects responsibility for the allegedly negligent (1) lapse in the lighting of the parking lot, and (2) failure to remove an accumulation of wet leaves.
The case law in Massachusetts imposes a common duiy of reasonable care on owners and occupiers of land to all lawful visitors. Mounsey v. Ellard, 363 Mass. 693, 707 (1973). “A landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.” Id. at 708. (Citation omitted.) At a minimum, the landowner must “[a]t least warn [patrons] of any dangers that might arise from [the premises] which are not likely to be known to them, and of which the defendant knows or ought to know.” Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165, 167 (1973). The reasonable care standard permits a jury to determine which “[b]urdens of care are unreasonable in light of the relative expense and difficulty they impose on the owner or occupier as weighed against the probability and seriousness of the foreseeable harm to others.” Id. at 709. Accordingly, like other cases of alleged negligence, the determination whether the owner or occupier of land breached his duty of reasonable care to a lawful visitor is a fact question for the jury.
In support of its motion for summary judgment, Paxton Post argues that it was not liable for the accumulation of wet leaves and it had no duty to provide lighting for its parking lot. It asserts that, even if it were responsible for the “inadequate” lighting and the accumulation of water and leaves, the plaintiff cannot state for certain that she, in fact, slipped on an accumulation of wet leaves at Paxton Post’s premises. It goes on to argue that, since the plaintiff is unable to specify the cause of her slip and fall, summary judgment should be granted in its favor.
I will first address the issue whether, as a matter of law, this court can determine that no legal duty can be imposed upon Paxton Post for its alleged failure to provide adequate lighting and to remove the wet leaves at its premises. As previously stated, Paxton Post argues that it owed no duty to the plaintiff to provide adequate lighting in its parking lot. However, as discussed above, Paxton Post owes a duty to use reasonable care to keep the premises in a reasonably safe condition. “What constitutes the required care and diligence is a question of fact.” Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203 (1964). From the summary judgment materials, a question of fact exists as to whether Paxton Post was negligent in failing to light the parking area where the plaintiff fell in light of the surrounding circumstances. See, Spring v. Foodmaster Super Market, Inc., 2 Mass.App.Ct. 808 (1974); Romano v. Massachusetts Port Authority, 3 Mass.App.Ct. 765, 766 (1975); Warren v. Squire Road Cabin, Inc., 347 Mass. 764 (1964).
Paxton Post also states that the accumulation of wet leaves is similar to the natural accumulation of snow and ice. It is well settled in Massachusetts that “[l]andowners are liable for injuries caused by defects existing on their property and that the law does not regard the natural accumulation of snow and ice as an actionable property defect ...” Aylward v. McCloskey, 412 Mass. 77, 79 (1992). Accordingly, Paxton Post maintains that no liability can be imposed on it for the accumulation of leaves.
The plaintiff opposes Paxton Post’s analogy of the accumulation of snow and ice to the accumulation of leaves. She argues that the rule regarding the natural accumulation of snow and ice does not apply to the facts at bar. Rather, Ms. Carey contends that her slip an fall on leaves is similar to the facts of Krupa v. Safe and Sound, Inc., 34 Mass.App.Ct. 933 (1993), in which a plaintiff tripped and fell on a walnut which had fallen from a tree adjacent to the defendant’s premises. In Krupa, the Appeals Court did not apply the rule for natural accumulation of snow and ice to the falling of the walnut. Instead, it stated that “[t]he question for the jury was whether the defendant had a duty to recognize that fallen walnuts collectively might constitute a danger to persons lawfully walking on [the defendant’s] property.” Id. at 933-34 citing Mounsey v. Ellard, 363 Mass. 693, 708 (1973); Glick v. Prince Italian Food of Saugus, Inc., 25 Mass.App.Ct. 901 (1987). See also, Silvia v. Supermarket, Inc., 1994 Mass.App.Div. 185 (finding by the trial judge, after trial, that the record revealed no evidence to support a finding that the accumulation of water and leaves existed for a sufficient length of time to have been discarded and removed; however, a finding that stor *168 age of carriages by the store near the area contributed to the accumulation ofwater could permit an inference that the dangerous condition was caused by a person for whose conduct the defendant was responsible).
The abundance of case law on the natural accumulation of snow and ice does not analogize snow and ice to other subjects such as the accumulation of wet leaves. Courts in Massachusetts have specifically removed liability from property owners for the natural accumulation of snow and ice and have required that the injured person demonstrate evidence beyond the natural accumulation of snow and ice in order to recover, because “[i]t is common knowledge that in this climate ... a number of conditions might exist which within a veiy short time could cause the formation of ice ... without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence.” Aylward, 412 Mass. at 80-81. Since this rule is so specific to the subject of snow and ice, I cannot extend it to the accumulation of wet leaves.[5] Accordingly, a genuine issue of material fact exists as to whether Paxton Post caused the plaintiffs injuries by breaching its duty to maintain its premises in a reasonably safe condition in view of all the circumstances.
Paxton Post contends that even if it were responsible for the “inadequate” lighting and the accumulation of wet leaves, its motion for summary judgment must still be granted because the plaintiff is unable to state definitively that the wet leaves caused her to fall. Although a jury is not permitted “ [t] o speculate on the causal relationship between the negligence and the injury!,] • • • the question of causation ... is generally a question of fact for the jury ... to be proved by a preponderance of the evidence.” Zezuski v. Jenny Manufacturing Co., 363 Mass. 324, 328-29 (1973) (citations omitted). This proof can be established “[e]ither by direct evidence or rational inference of probabilities from established facts.” Id. at 329. Therefore the plaintiff is not required to state, with absolute certainty that wet leaves caused her fall, but rather she is only “ [required to show by evidence a greater likelihood that [her injury] came from an act of negligence for which the defendant is liable.” Id. quoting Bigwood v. Boston & No. St. Ry., 209 Mass. 345, 348, (1911). After reviewing the summary judgment materials, which provide assertions that the area in which the plaintiff slipped and fell was covered by wet leaves and inadequate lighting, I conclude that a juiy could draw the rational inference that the plaintiffs injury was more likely than not caused by the wet leaves and inadequate lighting. Since the issue of liability is the question of reasonable care — or negligence— on the part of the landowner in the total circumstances, Mounsey v. Ellard, 363 Mass. 693, 707 (1973), summary judgment is inappropriate; a trial is necessary for application of the reasonableness standard to the evidence. E.g., Appleby v. Daily Hamshire Gazette, 395 Mass. 32, 37 (1985); and Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984). The summary judgment materials therefore leave a genuine issue of material fact as to the liability of Paxton Post.
ORDER
For the foregoing reasons, the court hereby ORDERS (1) the entry of summary judgment in favor of the defendant Weight Watchers, North American, Inc.; and (2) the entry of denial of summary judgment upon the claim of plaintiff against the defendant Paxton Post 306, The American Legion, Inc.

 In its answers to the plaintiff interrogatories, Paxton Post states that Weight Watchers has no specific maintenance duties imposed on it in connection with Weight Watchers’ informal hall rental arrangement with Paxton Post.

 It appears that two spotlights, which would have illuminated the area where the plaintiff fell, were not working or were not turned on at the time of Ms. Carey’s fall in Paxton Post’s parking lot.

 While a landlord’s reservation of control will subject it to liability, a “(t]enant is not thereby automatically relieved of duty or liability to his invitees if that tenant is aware of the unsafe condition.” Hopkins v. F.W. Woolworth Co., 11 Mass.App.Ct. 703, 705 (1981) (citations omitted). Although the plaintiff claims that the accumulation of leaves was present in the parking lot for at least two weeks prior to her slip and fall, there is no evidence that Weight Watchers had any knowledge of the alleged problem. This is not a case in which Weight Watchers ran a business out of the premises in which it daily viewed the building and the accompanying parking lot. Rather, Weight Watchers rented the facility for two hours a week in the evening. No complaints were ever made to Weight Watchers to inform them of the alleged problem. The uncontroverted information at this point in the case is that Weight Watchers first learned of the alleged defect and accident from service of the plaintiffs complaint.

 Even if we were to extend the natural accumulation of snow and ice rule to the natural accumulation of wet leaves, the summary judgment materials present enough evidence to defeat Paxton Post’s summary judgment motion. The case law, which removes liability from landowners for the natural accumulation of snow and ice, clearly indicates that “(i]n circumstances where some act or failure to act has changed the condition of naturally accumulated snow and ice, and the elements alone or in connection with the land become a hazard to lawful visitors, then a defect may exist, creating liability in the owner or occupier.” Id. at 80 citing Phipps v. Aptucket Post #5988 V.F.W. Bldg. Ass'n, 7 Mass.App.Ct. 928, 929 (1979).
The summary judgment materials at bar indicate that the accumulation of leaves existed in the parking lot for a least two weeks prior to the plaintiffs slip and fall. The jury may infer from these facts that Paxton Post had a reasonable opportunity to ascertain the presence of the leaves, to remove the leaves or to warn against their accumulation. Moreover, the plaintiff asserts that the inadequate lighting in the parking lot contributed to her slip and fall. In light of this evidence presented in the summary judgment materials, I find a genuine issue of material fact; whether Paxton Post breached its duty of reasonable care in the total circumstances.