PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4834

_____

WALTER HOLMES; LISA HOLMES, Husband and Wife,
Appellants

v.

KIMCO REALTY CORPORATION;

and

LOWE'S HOME CENTER INCORPORATED, A
corporation of the State of North Carolina, Authorized
to do business in New Jersey;
Defendant/Third Party Plaintiff,

v.

PRICE LEGACY CORPORATION, as landlord
successor by merger to Price Enterprises, Inc.,
a Maryland Corporation,
Third Party Defendant/Forth Party Plaintiff,

v.

DAVID FLACK, doing business as BOUNTIFUL
ACRES; GENERAL CASUALTY INSURANCE
COMPANIES,

Fourth Party Defendants.

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Number: 07-cv-00961)
District Judge:  Honorable Robert B. Kugler

————

Argued December 16, 2009
Before: FISHER, HARDIMAN and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: March 17, 2010)

Robert G. Devine  (Argued)
White & Williams
457 Haddonfield Road
Suite 400, Liberty View
Cherry Hill, NJ 08034-0000
*Attorneys for Appellees Kimco Realty Corp
and Lowe's Home Ctr, Inc.*

Benjamin Goldstein (Argued)
Stanley N.  Drinkwater
Drinkwater & Goldstein

277 White Horse Pike
Suite 200
Atco, NJ 08004
    *Attorneys for Appellants Walter Holmes and Lisa
Holmes*

F. Herbert Owens, III
Sweeney & Sheehan
216 Haddon Avenue
Sentry Office Plaza, Suite 701
Westmont, NJ 08108-0000
    *Attorneys for Third Party-Appellee Price Legacy Corp.*

Mauro C. Casci
Law Offices of Mauro C. Casci
739 Leonardville Road
P.O. Box 90
Leonardo, NJ 07737-0000
    *Attorneys for Not Party - Appellee David Flack, DBA
Bountiful Acres*

––––––

OPINION OF THE COURT

––––––

HARDIMAN, *Circuit Judge*.

This diversity action requires us to predict whether the
State of New Jersey would impose a common law duty on a

3

tenant in a multi-tenant shopping center to maintain the parking lot owned by the landlord.

I.

On January 20, 2005, Walter Holmes drove to a shopping center near Route 73 in Maple Shade, New Jersey (the Shopping Center), consisting of a parking lot and several businesses in stand-alone buildings, including Lowe's Home Center, Bally's Total Fitness, and Mattress Giant.[1] The businesses were some distance apart, with the entrance to Bally's located several hundred feet from the main entrance of Lowe's, and the entrance to Mattress Giant even farther away. Holmes parked in the area of the parking lot closest to Lowe's. This area contained shopping cart corrals displaying signs stating: "Please keep our parking lots safe by returning your cart. Thank you for shopping at Lowe's."

After making a purchase at Lowe's, Holmes was pushing his shopping cart to his car when he fell on "ice and/or snow" in the parking lot. Another customer came to Holmes's aid and helped him return to Lowe's to report the accident and obtain medical assistance. Shortly after the accident, Lowe's third party insurance administrator, Specialty Risk Services (SRS), contacted Holmes and his attorney, seeking information about the accident and Holmes's theory of Lowe's liability. There was

---

[1] The record suggests that Sports Authority was part of the Shopping Center, but it is unclear whether it was in business at the time of Holmes's accident.

4

some additional correspondence between SRS and Holmes and his attorney during the eighteen months following the accident. On January 10, 2007, Holmes sued Lowe's for negligent maintenance of the parking lot.[2] After the statute of limitations had expired, Lowe's informed Holmes that it was a tenant of the Shopping Center, not the owner of the real estate where Holmes slipped and fell.

Almost four years before Holmes slipped and fell, Lowe's had entered into a lease agreement (Lease) with Price Legacy Corporation for the use of a retail facility within the Shopping Center. Under the terms of the Lease, all tenants in the Shopping Center were demised the interior space of their individual buildings and enjoyed a non-exclusive right to use the parking lot and other common areas. Under the Lease, "Common Area" was defined as "the Primary Parking Area, the remainder of the parking areas in the Shopping Center, service drives, access roads . . . the entrances and exits of the Shopping Center, and all other areas that may be provided by Landlord for the general use in common of the tenants of the Shopping Center and their . . . invitees." Lease § 8(a)(iii). The Lease also provided that "Tenant, its . . . invitees and customers shall have the right to use, in common with all other occupants of the Shopping Center and their respective . . . invitees and customers, without charge, all Common Areas and Common Facilities of the Shopping Center." Lease § 8(f).

---

[2] Holmes's wife, Lisa Holmes, is also a plaintiff in the case, alleging a claim for loss of consortium.

Section 8(i) of the Lease required the landlord to maintain the Common Areas, including snow removal. In turn, each tenant was required to pay a pro rata share of common area maintenance costs. Lease § 8(j). Finally, the Lease required the landlord to "carry or cause to be carried commercial general liability insurance . . . upon all Common Areas and Common Facilities (not including the Demised Premises), naming Tenant as an additional insured . . . ." Lease § 10(c).

In October 2004, Price Legacy contracted with Bountiful Acres to remove snow from the Common Areas of the Shopping Center. The agreement provided for "monitor[ing of] the site 24 hours a day, 7 days a week during the snow season for snow and/or ice conditions," and for dispatch of equipment to the site to "control these conditions." During the winter season, Bountiful Acres kept equipment at the site, and dedicated a full-time foreman to the Shopping Center, with responsibility for all snow maintenance activities. On January 19, 2005, the day before Holmes's accident, Bountiful Acres had plowed and salted the parking lot and shoveled the sidewalks.

When Holmes learned that Lowe's did not own the real estate upon which he fell, he amended his complaint to add two entities suspected of owning the parking lot: Price Legacy and Kimco Realty Corporation.[3] This amendment came too late,

_____

[3] Price Legacy apparently sold the property to PL Mapleshade LLC c/o DRA Advisors LLC shortly before January 2005. In December 2008, during argument before the District Court on the motions for summary judgment, the parties still had

6

however, so the District Court granted summary judgment for both entities because the statute of limitations had expired. The District Court also granted summary judgment for Lowe's, finding that New Jersey would not impose a duty on a tenant for maintenance of a multi-tenant parking lot. The District Court ruled from the bench:

> In this situation under the *Erie* doctrine I have to predict what the New Jersey Supreme Court would do with this. And although the Supreme Court of New Jersey has extended liability in some very specific situations beyond the actual premises, I don't think they would do so in this case because of the multi-tenant use of this lot and, therefore, I'm going to grant the motion for summary judgment for Lowe's. I do not find that Lowe's had any duty whatsoever.

> I further don't find under the facts presented to the Court that Lowe's assumed any duty over this parking lot to maintain it free of ice and snow.

(Mot. Hr'g Tr. 53, Dec. 5, 2008.)

---

not identified conclusively the owner of the property at the time of Holmes's accident.

Holmes appeals only the grant of summary judgment to Lowe's. The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We exercise de novo review over the District Court's summary judgment and view the facts in the light most favorable to Holmes, the nonmoving party. *See Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004). The existence of a duty is generally a matter of law. *Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). Because the question of a tenant's common law duty to maintain a multi-tenant parking lot has not been addressed by the New Jersey Supreme Court, we must "predict how the New Jersey Supreme Court would rule if presented with this case." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 489 (3d Cir. 1991). In predicting how the highest state court would decide an issue, we look to analogous state court cases and "[i]n the absence of an authoritative pronouncement by a state's highest court, we may give serious consideration to the opinion of an intermediate appellate court." *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148 (3d Cir. 1988) (citations omitted). We may also look to "scholarly treatises, the Restatement of Law, and germane law review articles." *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662-63 (3d Cir. 1980) (footnotes omitted). "[R]elevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince." *Id.* at 662.

8

A.

The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care. Under New Jersey law, "whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 833 (N.J. 2004) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110 (N.J. 1993)). This inquiry requires the balancing of several factors including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Id.* (internal quotations omitted).

Holmes correctly notes that New Jersey places a relatively broad duty on commercial landowners to ensure the safe ingress and egress of their patrons. In the landmark case of *Stewart v. 104 Wallace Street, Inc.*, 432 A.2d 881, 887 (N.J. 1981), New Jersey reversed its "no liability" rule and extended a commercial landowner's duty of care to include the sidewalk abutting its property, even when the sidewalk is neither owned nor controlled by the landowner. The court identified a number of public policy considerations supporting the imposition of liability, including: (1) commercial landowners receive considerable benefits from and rights to use the sidewalks, over and above those of the public; (2) the "no liability" rule undermines the goals of tort law by "le[aving] without recourse many innocent parties who suffered serious injuries because of sidewalk defects"; (3) the "no liability" rule provides no

9

incentive to abutting property owners to repair deteriorated sidewalks and prevent injuries; (4) landowners are in an ideal position to inspect and repair sidewalks abutting their property; and (5) a New Jersey statute authorizes municipalities to make abutting landowners responsible for sidewalk repair. *Stewart*, 432 A.2d at 884, 886-88. Two years after *Stewart*, the New Jersey Supreme Court held that the duty to maintain sidewalks in a reasonably safe condition includes a duty to remove accumulations of snow and ice. *Mirza v. Filmore Corp.*, 456 A.2d 518, 521 (N.J. 1983) ("The many innocent plaintiffs that suffer injury because of unreasonable accumulations should not be left without recourse."). In the years since *Stewart*, New Jersey courts have applied the case to broaden the duty of care owed by landowners and tenants in exclusive possession for the ingress and egress of their customers. In these cases, courts have rejected lack of control over the premises as a defense to imposition of a duty of care. *See Monaco*, 840 A.2d at 831 ("[I]n a long line of cases, our courts have extended a commercial landowner's duty, when warranted by the facts, to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property."). For example, in *Warrington v. Bird*, the New Jersey Appellate Division applied *Stewart* to impose a duty on a restaurant owner whose customers were hit by a speeding car while crossing a public road at night as they returned to the restaurant's parking lot. 499 A.2d 1026, 1030 (N.J. Super. Ct. App. Div. 1985) ("[W]hen a business provides a parking lot across the roadway from its establishment, the duty of the proprietor to exercise reasonable care for the safety of its patrons extends to conditions obtaining at the parking lot and requires that the patrons not be subjected to an unreasonable risk of harm in traversing the

10

expected route between the two locations."), *cert. denied*, 511 A.2d 653 (N.J. 1986).

Similarly, in *Antenucci v. Mr. Nick's Mens Sportswear*, the Appellate Division applied *Stewart* to impose a duty for sidewalk maintenance on commercial tenants in exclusive possession of the premises, reasoning that "the policy considerations underlying the holding in *Stewart* have equal applicability . . . to a lessee who is in exclusive possession of commercial premises abutting a sidewalk." 514 A.2d 75, 76-77 (N.J. Super. Ct. App. Div. 1986); *see also Jackson v. K-Mart Corp.*, 442 A.2d 1087, 1090-91 (N.J. Super. Ct. Law Div. 1981) (tenant had same sidewalk duty as owner, otherwise "[b]usiness tenants, knowing that their customers were traveling a defined route to reach their premises, could ignore the unsafe condition of that route with impunity"). The *Antenucci* court was careful to limit its holding to tenants in exclusive possession, however, and expressly declined to opine whether the same rule applied to multi-tenant facilities. *Id*. at 77-78.

Although the New Jersey Supreme Court has not addressed the question left open by *Antenucci*, subsequent cases from lower courts have refused to impose a duty on tenants for common areas of a multi-tenant facility. We now turn to those cases.

B.

In *Barrows v. Trustees of Princeton University*, the New Jersey trial court refused to apply *Stewart* and *Antenucci* to commercial tenants in a "multi-tenant shopping complex." 581

11

A.2d 913, 914 (N.J. Super. Ct. Law Div. 1990). After arriving at a shopping complex, Barrows visited three stores before falling on a patch of ice on the sidewalk in front of a fourth store called Lavake's. Barrows sued all four of the stores he had visited, as well as the owner of the complex. The *Barrows* court reviewed the expansive rules established by *Stewart* and *Antenucci* but held that the duties they imposed "do not extend to tenants in multi-tenant shopping complexes" because such tenants "will not, absent a contractual obligation, have control or maintenance responsibilities for common walkways or sidewalks." *Barrows*, 581 A.2d at 915. The court dismissed all of the tenant stores except Lavake's, whose potential liability "d[id] not rest upon the holdings of *Stewart* and *Antenucci* but upon common law principles of negligence," *i.e.*, Lavake's had control over the awning which created the icy patch on the sidewalk and it could have foreseen the danger. *Id.* (citations omitted).

The United States District Court for the District of New Jersey subsequently applied *Barrows* to a negligence action arising from a fall on a moving walkway at an airport in *Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203 (D.N.J. 1992). The court held that the airline's duty to provide its passengers with a reasonably safe means of ingress and egress "did not and does not encompass the common areas of the airport terminal." *Id.* at 1215. Extension of a duty of care to areas beyond the airline's control would "violate principles of foreseeability and fairness," *id.* at 1216, with "no logical end to th[e] duty," *id.* at 1215.

12

The New Jersey Appellate Division also has considered the issue of multi-tenant facilities in two unpublished decisions, and has followed the reasoning of *Barrows* and *Kantonides*. In a negligence action by a ferry customer who slipped on ice in a parking lot, the court refused to impose a duty of care on the ferry operator, which licensed its terminal from the County, for snow removal in the adjacent County-owned parking lot, even though the ferry operator had some responsibility with respect to the lot which was used by its customers. *Siegel v. County of Monmouth*, No. L-57-04, 2007 WL 1628141 (N.J. Super. Ct. App. Div. June 7, 2007), *certification denied*, 932 A.2d 28 (N.J. 2007). Pursuant to the agreement between the ferry operator and the County, passengers were permitted to park in the lot free of charge, with the ferry operator providing a shuttle bus from various areas of the parking lot to the terminal. *Id.* at *1. The passengers did not have exclusive rights to the lot, however, as it was also used by "[b]eachgoers, fishermen, sightseers, and any other member of the public wishing to use the lot." *Id.* at *1. The agreement also provided that the County would be responsible for snow removal from the lot, while the ferry operator would be responsible for routine maintenance and daily cleaning. *Id.* at *2.

The *Siegel* court concluded that the agreement did not constitute a lease of the parking facility, and further held that the ferry operator "lacked the necessary control over the parking lot to give rise to a duty of care to plaintiff." *Id.* at *5. Among other reasons, the Appellate Division declined to impose a duty for snow removal on the ferry operator because it was not contractually required or authorized to remove snow from the parking lot. Rather, the County retained responsibility for snow

13

removal and was exercising that duty. Finally, the court distinguished *Siegel* from *Jackson v. K-Mart Corp.*, noting that (1) the ferry operator was a licensee, not a lessee of the County, and (2) the ferry operator was not in exclusive possession of the parking lot, so there was no "defined route" the ferry operator knew its patrons would cross, unlike the tenant in *Jackson*. *Id.* at *5.

Like *Siegel*, in *McCann v. Borough of Washington*, the Appellate Division refused to impose a duty of care on Weight Watchers, which rented a room inside a municipal building for weekly meetings. No. L-294-04, 2006 WL 2726818 (N.J. Super. Ct. App. Div. Sept. 26, 2006). A participant at a Weight Watchers meeting slipped on ice on the front steps of the Borough building and sued Weight Watchers and the Borough for negligence. In refusing to impose a duty on Weight Watchers, the court noted that the extension of liability to commercial tenants in *Antenucci* had been limited to tenants in exclusive possession of the premises. The court discounted the plaintiff's reliance on *Warrington* on the ground that the restaurant was the sole occupant of the building and the parking lot whereas Weight Watchers was one of many tenants of the Borough building. *Id.* at *1-2. The Appellate Division acknowledged that the New Jersey Supreme Court had previously "eschewed 'control'" over the premises as the determinative factor in imposing a duty and instead looked to basic fairness under all the circumstances. *Id.* at *2. The *McCann* court reasoned: "it would not comport with basic principles of fairness to impose a duty on the weekly renter of a single meeting room, in a building occupied on a regular basis by others." *Id.*

14

The approach taken by *Barrows* and *Kantonides* is in accord with the rule adopted by the great majority of other jurisdictions to have considered the question which hold that a lessee in a multi-tenant shopping center does not have a duty to maintain common areas controlled by the landlord.[4] *See* Frank

---

[4] *See Berry v. Houchens Mkt. of Tenn., Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2008) (shopping center tenant had no duty to patron who slipped in oil in parking lot where parking lot served multiple tenants and landlord was responsible for its maintenance); *Marrone v. S. Shore Props.*, 816 N.Y.S.2d 530, 532 (N.Y. App. Div. 2006) (lessee had no duty to maintain strip mall sidewalk it neither owned nor possessed exclusively); *Durm v. Heck's, Inc.*, 401 S.E.2d 908, 911 (W. Va. 1991) ("[W]here a lease agreement clearly sets forth that the lessor has the duty to maintain the non-leased common areas, thereby retaining the lessor's control over such areas, the lessee of a store located in a shopping center is not liable when a patron sustains injuries as a result of an accident which occurs on the non-leased common area."); *Johnson v. Tom Thumb Stores, Inc.*, 771 S.W.2d 582 (Tex. Ct. App. 1989) (shopping center tenant not liable to customer who fell in common area of shopping center ten feet from entrance to tenant's store where landlord was responsible for and had control over common areas); *Dopico-Fernandez v. Grand Union Supermarket*, 841 F.2d 11, 14-15 (1st Cir. 1988) (under Puerto Rico law, tenant served by common areas in mini-mall not responsible for maintaining those areas) *cert. denied*, 488 U.S. 864 (1988); *Raspilair v. Bruno's Food Stores, Inc.*, 514 So. 2d 1022, 1024 (Ala. 1987) (shopping center tenants Wal-Mart and Bruno's did not owe

15

duty to customer who fell on plastic bag in parking lot where, under the lease, shopping center owner was responsible for cleaning and maintenance of parking lot); *Hall v. Quivira Square Dev. Co., Inc.*, 675 P.2d 931, 932-33 (Kan. App. 1984) (tenant had no duty to warn customer who fell in multi-tenant lot because shopping center owner solely responsible for making all repairs and conducting maintenance for common areas including sidewalks and parking spaces); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 600 P.2d 1198, 1200 (N.M. App. 1979) (shopping center tenant not liable for customer's fall on grease in parking lot where, though lease silent as to responsibility for maintenance, parking lot was for common use of all tenants and tenant did not exercise control over parking lot), *cert. denied*, 604 P.2d 821 (N.M. 1979); *Leary v. Lawrence Sales Corp.*, 275 A.2d 32, 34 (Pa. 1971) ("In Pennsylvania, it has long been established as a principle of landlord-tenant law that where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passageways and aisles which are to be used by business invitees of the various tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases."); *Underhill v. Shactman*, 151 N.E.2d 287, 290 (Mass. 1958) (shopping center tenant not liable to customer who fell in parking lot landlord was obliged to maintain notwithstanding fact that tenant could provide parking attendants). *But see, e.g.*, *Levy v. Home Depot, Inc.*, 518 So. 2d 941 (Fla. Dist. Ct. App. 1987) (Home Depot not absolved from liability for gap in elevated sidewalk in common

16

D. Wagner, Annotation, *Liability of Lessee of Particular Premises in Shopping Center for Injury to Patron from Condition on Portion of Premises Not Included in His Leasehold*, 48 A.L.R.3d 1163 (2009).

C.

In light of the cases we have discussed, Holmes argues that Lowe's is more similar to a stand-alone facility with responsibility for its parking lot like the K-Mart in *Jackson*, while Lowe's urges us to apply the rule for multi-tenant shopping complexes.[5] Holmes relies heavily on the following

---

parking lot of shopping mall simply because mall owner contractually responsible for common area maintenance); *Wilson v. Allday*, 487 So. 2d 793, 798 (Miss. 1986) (lessee had duty of care with respect to shopping center parking lot if its use constituted possession and control); *Hopkins v. F.W. Woolworth Co.*, 419 N.E.2d 302, 304 (Mass. Ct. App. 1981) (lessee in shopping mall had duty to patron who fell on common area sidewalk near lessee's store, "[e]ven if a finding were warranted that Woolworth had no control over the sidewalk on which the plaintiff fell, it would not be relieved from its duty to warn invitees of danger" of which it was aware).

[5] We reject Lowe's argument that it should not be held liable because the Lease obliged the landlord to remove snow and the contracting parties are in the best position to allocate such risks. The allocation of risk made by the lease may define indemnity rights between Lowe's and the landlord, but it cannot

language from *Warrington* for the proposition that imposition of a duty is determined by the reasonable expectation of an invitee:

> [T]he critical element should not be the question of the proprietor's control over the area to be traversed but rather the *expectation of the invitee* that safe passage will be afforded from the parking facility to the establishment to which they are invited. Commercial entrepreneurs know in

conclusively determine Lowe's common law tort duties to third party invitees. *See Jackson v. K-Mart Corp.*, 442 A.2d at 1091 ("The effect of the covenant to maintain is only to allocate costs between the tenant and the property owner. . . . [T]he covenant absolves neither landlord nor tenant from liability to innocent third parties."); *O'Connell v. New Jersey Sports and Exposition Auth.*, 766 A.2d 786 (N.J. Super. Ct. App. Div. 2001) (tenant not absolved of liability where lease placed maintenance responsibility on landlord because tenant exercised some control over interior of stadium where plaintiff fell) (citations omitted). Of course, the converse of this proposition is true as well. If New Jersey were to adopt the dissent's rule of law, tenants would be jointly and severally liable and would have no common law right of complete indemnification. *See* New Jersey Joint Tortfeasors Contribution Law, N.J. Stat. Ann. § 2A:53A-3 (providing that a joint tortfeasor who "pays [a] judgment in whole or in part, . . . shall be entitled to recover contribution from the other joint tortfeasor . . . for the excess so paid over his pro rata share").

18

> providing the parking facility that their customers will travel a definite route to reach their premises. The benefitting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway.

*Warrington*, 499 A.2d at 1029-30 (emphasis added). Under Holmes's approach, *Barrows* and *Kantonides* do not apply here because Lowe's did not look or act like a multi-tenant facility; it was located in a stand-alone building, with essentially its own parking area designated by Lowe's cart corrals and signs. Therefore, a "reasonable invitee" would expect Lowe's to have a duty to maintain the parking area where Holmes fell.

As a preliminary matter, we note that it is unclear that the expectation of an invitee is relevant in the context of a multi-tenant facility, as *Warrington* involved a proprietor in exclusive possession, and neither *Barrows* nor *Kantonides* considered invitee expectation as part of their multi-tenant analyses. *See Kantonides*, 802 F. Supp. at 1214 (refusing to apply reasoning of *Antenucci/Warrington* because "[t]his line of cases . . . deals only with tenants in exclusive control of the premises"). Regardless, even when invitee expectation is considered, Holmes's argument fails because the Shopping Center parking lot looked like a multi-tenant facility. The signs at the entrance to the lot identify multiple tenants, not just Lowe's. While a Lowe's customer will undoubtedly park as close as possible to that store, he could park anywhere in the lot. Unlike in *Warrington* and *Jackson*—and contrary to the dissent's

19

characterization—there is not one "defined route" from the lot to the store.[6]   Therefore, while a reasonable invitee to the Shopping Center would expect safe passage from the parking lot to any of the stores benefitting from the lot, the invitee would not reasonably expect one tenant to be responsible for maintaining the entire lot.   *See Puterman v. City of Long Branch*, 859 A.2d 1246 (N.J. Super. Ct. Law Div. 2004) (refusing to impose duty on owner of strip mall for icy conditions in an adjacent municipal lot even though owner advertised that patrons could park in the lot where there were numerous routes an invitee could take from the lot to the mall). While our dissenting colleague correctly notes that Lowe's and the other tenants are located in stand-alone buildings instead of interconnected stores, this fact does not negate the shared nature of the parking lot.

Although *Barrows*, *Siegel*, *McCann*, and *Kantonides* are not decisions of the New Jersey Supreme Court, and are not binding on our interpretation of New Jersey law, we find them persuasive because they are consonant with the public policy considerations underlying *Stewart* and the basic fairness

---

[6] The record demonstrates that some of the parking spaces in front of Bally's are closer to Lowe's than many of the parking spaces in front of Lowe's.  This is especially true if one patronizes Lowe's lumber center.  This fact highlights the uncertainty inherent in the rule of law proposed by the dissent, which would vary from store to store and from shopping center to shopping center depending on the tenant mix and the configuration of the parking lot.

principle of *Monaco.* It is true both that Lowe's derives a benefit from the parking lot and that the imposition of a duty would incentivize Lowe's to prevent dangerous conditions. But countervailing policy considerations weigh more heavily against imposition of a duty. To oblige tenants to maintain common areas would result in substantially increased costs with little added benefit. Landlords already have great incentive to keep the parking areas of their shopping centers free of snow, ice, and other hazards. A well-maintained parking lot induces shoppers to patronize the center and motivates tenants to pay their common area maintenance fees. Given the landlord's snow removal program here, the risk of not imposing a duty on Lowe's is minimal. Moreover, the imposition of a duty on the tenants would result in duplicative effort and interference with the landlord's maintenance program. It is not hard to imagine the confusion, and perhaps danger, that could ensue if snow plows and salt trucks hired by the landlord, Lowe's, Bally's Total Fitness, and Mattress Giant all attempted to maintain the parking lot at the same time. The thought of the same occurring in a shopping center with twenty or more tenants highlights the absurdity of such a shared duty.

Imposition of a duty on tenants in a multi-tenant facility also would lead to uncertainty with respect to the areas of the parking lot for which each tenant is responsible. *See Kantonides*, 802 F. Supp. at 1215 ("If KLM were found to owe passengers a duty of care with regard to distant premises that it does not own, lease, control or maintain, there would be no logical end to that duty."). This uncertainty would encourage "shotgun" litigation of the type seen in *Barrows*, where the

21

customer sued every store at which he had browsed or purchased an item prior to his fall.

Finally, one of the driving factors behind *Stewart*'s abandonment of the "no liability" rule is not implicated in the multi-tenant situation. The *Stewart* court expressed concern for injured customers who would be left without a remedy if landowners were not held responsible for abutting public sidewalks. Here, it is undisputed that the landlord—who owned, controlled, and was responsible for maintenance of the parking lot—had a duty to Holmes. That Holmes failed to file suit against the landlord within the limitations period leaves him without a remedy in this case, but counsel's error here should not result in the imposition of an unfair and unworkable duty upon the tenant.[7] The burden of identifying the owner of a multi-tenant property is not an onerous one and can be determined simply by examining public records.[8]

---

[7] Holmes also argues that Lowe's owed him a duty because it exercised some control over the parking lot, primarily with respect to the placement and maintenance of cart corrals. This argument is factually inapt because Holmes was not injured in a cart corral or by a shopping cart.

[8] We also reject Holmes's argument that Lowe's should be estopped from denying liability because it misled him into believing that it was the responsible party. Holmes's evidence is insufficient to establish estoppel because he has not presented any affirmative statements by Lowe's that it was the owner of the parking lot. Moreover, because estoppel is an equitable

22

III.

For the foregoing reasons, we predict that New Jersey would not impose a duty on an individual tenant for snow removal from the common areas of a multi-tenant parking lot when the landlord has retained and exercised that responsibility. Therefore, we will affirm Lowe's summary judgment.

---

doctrine, the party requesting such a remedy must demonstrate "good faith . . . *and reasonable diligence*." *Gluck v. Rynda Dev. Co.*, 134 A. 363, 367-68 (N.J. 1926) (emphasis added). Neither Holmes nor his counsel (whom Holmes retained shortly after the accident) undertook to determine ownership of the lot in a timely manner.

FISHER, *Circuit Judge*, dissenting.

The New Jersey courts have placed a broad duty of care on proprietors to ensure the safe ingress and egress of their patrons. Because I believe that the New Jersey Supreme Court would find that Lowe's owes Holmes a duty of care in the circumstances presented here, I respectfully dissent.

The landmark decision imposing a broad duty of care on store proprietors is *Stewart v. 104 Wallace Street Inc.*, 432 A.2d 881 (N.J. 1981). In *Stewart*, the New Jersey Supreme Court rejected a traditional "no liability" rule and held that "commercial landowners are responsible for maintaining in reasonably good condition the [public] sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." *Id.* at 887. In explaining its rationale, the court articulated some of New Jersey's public policy considerations. According to the court, the liability rule would (1) "provide a remedy to many innocent plaintiffs," (2) "give owners of abutting commercial property an incentive to keep their sidewalks in proper repair," and (3) "eliminate . . . arbitrariness." *Id.* The court also noted that owners are in the best position to inspect and discover sidewalk defects: "Logic and common sense also support the imposition of this duty, inasmuch as owners of abutting property are in an ideal position to inspect sidewalks and to take prompt action to cure defects." *Id.* at 888. *See also Mirza v. Filmore Corp.*, 456 A.2d 518, 521 (N.J. 1983) (extending *Stewart* to cover snow and ice removal).

The lower New Jersey courts have also placed a broad duty of care on store proprietors. *See, e.g., Nelson v. Great Atl. & Pac. Tea Co.*, 137 A.2d 599, 603 (N.J. Super. Ct. App. Div.

1958) (extending a proprietor's duty of care to the supermarket parking lot); *Merkel v. Safeway Stores, Inc.*, 187 A.2d 52, 55 (N.J. Super. Ct. Law Div. 1962) (extending a proprietor's duty of care to the public sidewalk connecting the parking area to the store entrance). *But see*, *e.g.*, *Chimiente v. Adam Corp.*, 535 A.2d 528, 529-30 (N.J. Super. Ct. App. Div. 1987) (declining to extend the duty of care to a pathway created by the trespassing public on a grassy slope adjacent to a shopping center but held by a separate owner). In particular, in *Warrington v. Bird*, 499 A.2d 1026 (N.J. Super. Ct. App. Div. 1985), the New Jersey Appellate Division held that a proprietor's duty of care to its patrons extended to a roadway when patrons were required to cross the roadway to reach the proprietor's parking lot. The court explained, "the critical element should not be the question of the proprietor's control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited." *Id.* at 1029-30.

Against this backdrop of proprietor liability, we are presented with a discrete sub-issue: we must determine whether the Lowe's store's status as a tenant affects any duty of care it might otherwise have owed to its customers. Since the New Jersey Supreme Court has not yet ruled on this question, we are obliged to predict how it would resolve the issue. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220 (3d Cir. 2008). As the majority states, "[i]n the absence of an authoritative pronouncement by a state's highest court, we may give serious consideration to the opinion of an intermediate appellate court." *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148 (3d Cir. 1988). Fortunately, several New Jersey superior court cases are

2

illustrative. A New Jersey trial court, *Jackson v. K-Mart Corp.*, 442 A.2d 1087 (N.J. Super. Ct. Law Div. 1981), and appellate court, *Antenucci v. Mr. Nick's Mens Sportswear*, 514 A.2d 75 (N.J. Super. Ct. App. Div. 1986), have extended the *Stewart* liability rule to cover commercial tenants. However, another New Jersey trial court, *Barrows v. Trustees of Princeton University*, 581 A.2d 913 (N.J. Super. Ct. Law Div. 1990), and a federal district court applying New Jersey law, *Kantonides v. KLM Royal Dutch Airlines*, 802 F. Supp. 1203 (D.N.J. 1992), have since carved out an exception to the liability rule for multi-tenant facilities.

In *Jackson*, the plaintiff slipped and fell on a sidewalk connecting a K-mart store, of which she was a patron, to a parking lot. 442 A.2d at 1088. K-mart, a lessee, filed a motion for summary judgment on the grounds that it did not own the sidewalk and held no responsibility for its maintenance. *Id.* The New Jersey Law Division disagreed, holding that K-mart's liability was concurrent with that of the property owner. *Id.* at 1091. Looking to *Stewart* for guidance, the court made three "conclusions of law and policy":

> "(1) The operator of a commercial establishment must provide reasonably safe premises for business invitees.

> (2) No distinction should be made between the operator-owner and the operator-tenant, since in either case it is the operator who is in the best position to discover any dangerous condition.

3

> (3) The duty to provide reasonably safe premises includes a duty to provide a safe path of egress from the premises."

*Id.* at 1090. The court explained that to hold otherwise "would discourage commercial operators from undertaking necessary corrective measures even though a transient hazard, such as a snow and ice accumulation, would often be easily discovered by an operator." *Id.*

The New Jersey Appellate Division followed suit in *Antenucci*. As in *Jackson*, the plaintiff in *Antenucci* fell on a sidewalk in front of a proprietor-tenant, a sporting goods store. 514 A.2d at 75-76. Finding that *Stewart* "did not make a distinction between the owner and a tenant in exclusive possession of the commercial premises" and that the *Stewart* public policy considerations applied in both instances, the court held, "we find sufficient direction in *Stewart* to impose upon a lessee in exclusive possession of premises abutting a public sidewalk[] a duty to keep the walkway in good repair for the benefit of pedestrians." *Id.* at 77. The court emphasized that the rule "applies only to a commercial tenant who is in exclusive possession of the premises abutting the sidewalk." *Id.*

Four years later, the New Jersey Law Division in *Barrows* carved out a logical exception to the tenant liability rule. Unlike *Jackson* and *Antenucci*, where the plaintiffs each fell in front of a single store, the plaintiff in *Barrows* slipped and fell on a patch of ice on a mall sidewalk. 581 A.2d at 914. Although the plaintiff was in front of a particular store when he fell, he had shopped in several of the mall's stores during the

4

course of his trip. *Id.* Under these circumstances, the *Barrows* court cited *Antenucci* with approval but declined to apply its holding in the mall context:

> "Because tenants in a multi-tenant shopping mall will not, absent a contractual obligation, have control or maintenance responsibilities for common walkways or sidewalks, this court concludes that the duties imposed by *Stewart* and *Antenucci* do not extend to tenants in multi-tenant shopping complexes."

*Id.* at 915. Accordingly, the court granted the defendants' motions for summary judgment. *Id.*

The only other court to apply a multi-tenant exception in a published opinion is the federal district court in *Kantonides*, a case involving a very unique set of facts. In *Kantonides*, the plaintiffs filed suit against an airline company, which was to provide them with round-trip air transportation, after the plaintiffs fell on a moving walkway while proceeding to a connecting flight. 802 F. Supp. at 1205. The moving walkway was in the common area of a terminal building that was owned, maintained, and controlled by the airport, not the specific airline company. *Id.* at 1206. Citing both *Antenucci* and *Barrows* with approval, the district court held that "[the airline] is a commercial tenant and does not 'exclusively possess' the common area of [the airport] where the moving walkway is located" and granted the airline's motion for summary judgment. *Id.* at 1214-16. The court explained that the opposite conclusion would be "impractical": "If [the airline] were found to owe

5

passengers a duty of care with regard to distant premises that it does not own, lease, control or maintain, there would be no logical end to that duty." *Id.* at 1215.

Examining these opinions against the backdrop of New Jersey case law, I would hold that the New Jersey Supreme Court would find Lowe's liable and not apply the multi-tenant exception articulated in *Barrows* and applied in *Kantonides*. Although Lowe's may technically be a part of a multi-tenant complex, the Maple Shade Shopping Center does not resemble the *Barrows* or *Kantonides* facilities: Lowe's was in "exclusive possession" of its building – albeit in a larger, shared shopping area – while the tenants in *Barrows* shared possession of one mall building, and the airlines in *Kantonides* shared possession of one airport terminal. *See Antenucci*, 514 A.2d at 77. The *Barrows* and *Kantonides* facilities also housed a much larger number of tenants in much closer proximity than the Maple Shade Shopping Center.

The facts of the instant case are much more similar to those presented in *Jackson*. Like most K-mart and Lowe's stores, Lowe's occupies a separate building that sits at a distance from the three other tenants in the Maple Shade Shopping Center. Its parking lot is defined and set apart by "cart corrals" that house Lowe's carts and are marked by Lowe's signs, which demonstrates that the tenants have jointly inspected and exercised control over separate sections of the parking area. The cart corrals also signal to the customer that Lowe's is a separate entity with its own responsibilities, leading Lowe's patrons to "expect[] . . . that safe passage will be afforded from the parking facility to the [Lowe's] to which they are invited."

6

*Warrington*, 499 A.2d at 1029. In these circumstances, a New Jersey court would likely hold that there is no distinction between proprietor-owners and proprietor-tenants. A contrary holding could lead to an absurd result, as a K-mart or Lowe's store's duty of care would depend on whether the store stood alone on a highway or within a few hundred feet of another tenant in a "shopping center."

The majority states that "a Lowe's customer . . . could park anywhere in the lot" and that "there is not one 'defined route' from the lot to the store." I disagree. Since the Maple Shade Shopping Center has only three distinct stores – a Lowe's, a fitness center, and a mattress store – its customers most likely park directly in front of the single store they plan to visit and do not meander through the parking lot on an extended shopping trip that encompasses multiple stops. Therefore, the "defined route" extends from the parking lot in front of Lowe's to the Lowe's store entrance.

The public policy considerations articulated by the New Jersey Supreme Court in *Stewart* also support a finding of liability in the present case. First, the imposition of a duty of care will provide a remedy to Holmes, who, other than his failure to examine the public records to determine the owner of the Maple Shade Shopping Center, is an "innocent plaintiff." *Stewart*, 432 A.2d at 887. More importantly, allowing plaintiffs like Holmes to pursue their claims gives Lowe's "an incentive to keep [its parking lot] in proper repair." *Id.* This makes sense. Even beyond owners, who may or may not keep watch over their property, tenants "are in an ideal position to inspect [parking lots] and to take prompt action to cure defects." *Id.* at 888. To

hold otherwise would allow tenants to turn a blind eye to dangerous parking lot or sidewalk conditions with the assurance that they will not be held responsible. Finally, liability will "eliminate . . . arbitrariness" by placing plaintiffs who file suit against proprietor-owners and those who file suit against proprietor-tenants in the same position. *Id.* at 887.

The majority expresses a legitimate concern that "the imposition of a duty on the tenants would result in duplicative effort and interfere with the landlord's maintenance program." Keeping in mind that we are charged with predicting New Jersey Supreme Court decisions, not with fashioning a preferable rule, I disagree that this concern outweighs those I have just expressed. The imposition of a duty of care will probably not incite tenants to engage in their own competing maintenance programs. Rather, tenants will be encouraged to keep a watchful eye over leased premises and give prompt notification to landlords when problems arise. In the event that a tenant is held liable for its patrons' injuries, the tenant will have the option of pursuing an indemnification action against the responsible landlord, a point that the majority opinion fails to stress.

Therefore, for the foregoing reasons, I respectfully dissent.