NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1969
_____

US SMALL BUSINESS ADMINISTRATION,
as receiver for Acorn Technology Fund, L.P.,


v.

RICHARD D. PROPPER; CHARLES R. SMITH;
ACORN CONNECTICUT INVESTMENTS, L.P.;
DANIEL P. BEHARRY; KERRY PROPPER;
KENNETH M. BOROW; P. TIMOTHY GARTON;
MICHAEL D. CHERMAK; WILLIAM S. LERACH

Richard D. Propper, Charles R. Smith,
Acorn Connecticut Investments, L.P.,
Daniel P. Beharry, Kerry Propper,
Kenneth M. Borow, P. Timothy Garton,
Michael D. Chermak,

Appellants


_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
Case No. 2-03-cv-05982
District Judges: Honorable Joel H. Slomsky

_____


Submitted Under Third Circuit LAR 34.1(a)
June 11, 2010


Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges.

(Filed August 25, 2010)

_____

OPINION

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

The United States Small Business Administration ("SBA"), in its capacity as Receiver for Acorn Technology Fund, L.P. ("Acorn" or the "Partnership"), filed separate actions against Charles R. Smith, P. Timothy Garton, and Michael D. Chermak (collectively, the "appellants") alleging breach of contract. The appellants were individual limited partners in Acorn. They appeal from the District Court's order granting summary judgment in favor of SBA. We will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts. Acorn was a small business investment company ("SBIC"), licensed by the SBA pursuant to the Small Business Investment Act of 1958, 15 U.S.C. § 661, <u>et seq</u>. Acorn was formed in September 1997 as a New Jersey limited partnership. Acorn Technology Partners, L.L.C. ("ATP") was the general partner of Acorn. Acorn Connecticut Investments, L.P. ("ACI") was a Connecticut limited partnership formed in January 1999 for the purpose of investing in Acorn. Daniel Beharry was the general partner of ACI. The appellants initially were all limited partners in ACI. However, following their initial investments in ACI, the appellants invested

2

directly in Acorn.

The SBA approved Acorn's SBIC license application in June 1999. To be eligible for an SBIC license, the Partnership had to be formed "solely for the purpose of" being an SBIC under 13 C.F.R. § 107.160. SBA regulations required the Partnership to submit a copy of its Limited Partnership Agreement ("LPA") with its license application. Id. § 107.160(b)(1).

According to Acorn's Subscription Agreement, investors "irrevocably subscribe[] for and agree[] to purchase the dollar amount of limited partnership interests . . . in the Partnership indicated on the signature page hereof" and "to be bound by all of the terms and conditions of the Partnership Agreement." Appendix ("App.") 92. Section 3.4 of the LPA, "Remedies for Failure of a Private Limited Partner to Make a Contribution to Capital," lists five remedies available in the event that a private limited partner fails to make a capital contribution: (1) interest on overdue contributions, (2) termination of the private limited partner's right to make further capital contributions, (3) forfeiture of the limited partner's interest in the partnership, (4) withholding and application distributions, and (5) required sale of the private limited partner's interest in the partnership. App. 121-24. The LPA required SBA consent for remedies (2), (3), and (5). Id.

At issue in this appeal is the second remedy, termination of a limited partner's right to make further capital contributions, set forth in Section 3.4.2. The LPA specifically provides that "[t]he Partnership shall not enter into any agreement (whether

3

oral or written), release or settlement with any Partner or take any action under any provision of the Agreement which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership" without the SBA's prior written consent. App. 133.

On January 13, 1999 (when the appellants were still invested with ACI), John Torkelson, President and Manager of ATP, sent a Modified Subscription Agreement ("MSA") to Beharry. According to the MSA:

> The General Partner represents that in the event that ACI is delinquent by more than thirty (30) days in making any part of its capital contribution to the Fund, the exclusive remedy available to the General Partner and the Fund will be to terminate the right of ACI to make further capital contributions to the Fund, in accordance with and subject to the terms of Section 3.4.2. of the Agreement of Limited Partnership (the Agreement), any provision of the Agreement to the contrary notwithstanding, unless ACI otherwise affirmatively consents.

App. 249.

The appellants agreed to make capital contributions to Acorn in four installments. They paid the first three installments, but did not pay the fourth capital call, due on March 15, 2001.

On March 30, 2001, the SBA issued a memorandum to all SBICs making clear that "an SBIC cannot forgive, extend or modify an investor's commitment to contribute capital to the SBIC without obtaining SBA's prior approval. SBA, however, will not generally approve any request that will result in a reduction of Regulatory Capital due to a default by a limited partner." App. 417-18. The memorandum also requested each SBIC

4

with unfunded commitments to either submit an updated Capital Certificate or submit a letter to the SBA certifying that it conducted a review of unfunded commitments and institutional investors and no changes are required to the Capital Certificate.

On April 12, 2001, Torkelson reiterated to the appellants via email correspondence that Acorn could not release any limited partners from their capital obligation without SBA approval. Specifically, Torkelson wrote, "there seems to have been an unfounded rumor among some people that defaulting Limited Partners would simply be released from their obligation to contribute capital and have their existing investment levels frozen. That is not the case." App. 420-22.

On April 24, 2001, Torkelson applied to the SBA for an additional $5 million commitment in federal funds. The application for more funding included an exhibit, "Conditions to exercise of right to receive unfunded commitments," which was filled out as "N/A." App. 404. On June 14, 2001, Harry Haskins, on behalf of the SBA, sent Torkelson a letter (the "Haskins Letter") committing to reserve leverage in the form of $5 million in securities, subject to SBA regulations and other specified conditions. One such condition was that the General Partner take action "to collect committed capital called from the private limited partners and not received." App. 430. Torkelson agreed to and accepted the conditions on behalf of Acorn by signing the letter.

On June 22, 2001, Torkelson sent an email to Mark Mead at the SBA announcing Torkelson's intent to invoke Section 3.4.2. with respect to the uncollected capital call if

5

the limited partners in default did not make payment by June 29, 2001. App. 238. The appellants allege, and the SBA disputes, that Mead verbally approved Torkelson's proposed action on June 25, 2001. Later that day, Torkelson sent email correspondence to each of the appellants in accordance with his June 22, 2001 proposal. None of the appellants made a payment; thus, on June 29, 2001, Torkelson, on behalf of ATP, issued an Action of Manager invoking Section 3.4.2 of the LPA and terminating the appellants' right to make additional capital contributions to Acorn. App. 247. On July 20, 2001, Haskins wrote a letter to Torkelson, providing that the "SBA does not consent to the release or termination of any Acorn partner's obligation to contribute capital to Acorn." App. 436.

In January 2003, the United States commenced a suit against Acorn. United States v. Acorn Tech. Fund, L.P., Civ. Action No. 03-0070. On January 17, 2003, the District Court appointed the SBA as Receiver for Acorn. On October 29, 2003, the SBA filed separate actions against each of the appellants, alleging breach of contract. The SBA alleged that the appellants breached the Subscription Agreement by failing to make their entire capital contributions. On July 22, 2008, the SBA moved for summary judgment. On October 6, 2008, the District Court granted the SBA's motion in full. Smith, Chermak, and Garton appeal from the District Court's order.[1]

---

[1]The original defendants included seven individuals and one limited partnership. This appeal involves only three of the original individual defendants.

II.

The District Court had jurisdiction pursuant to 15 U.S.C. § 687(d), 687c, and 687h, and 28 U.S.C. §§ 754, 1345 and 1367. We have jurisdiction under 28 U.S.C. § 1291.[2]

When reviewing an order granting summary judgment, we "exercise plenary review . . . and we apply the same standard that the lower court should have applied." Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000)). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we "view the facts in the light most favorable" to the nonmoving party. Holmes v. Kimco Realty Corp., 598 F.3d 115, 118 (3d Cir. 2010). "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).[3]

III.

A.

The appellants argue that the District Court erred when it concluded that there was

---

[2]On October 6, 2008, the District Court entered summary judgment against all the defendants except one; therefore the October 6 order was not a final judgment. On March 6, 2009, the District Court entered summary judgment against the remaining defendant, and entered a final judgment.

[3]It is undisputed that New Jersey law governs this action.

no genuine issue of material fact as to whether the SBA consented to ATP's termination of the appellants' capital contribution obligations. It is undisputed that ATP's decision to invoke this remedy required the SBA's consent. The appellants argue that ATP had three forms of consent from the SBA before it acted. First, the appellants point to the Haskins Letter. In particular, they argue that the following passage provided SBA consent:

> The General Partner will take action in accordance with the Company's Agreement of Limited Partnership dated September 30, 1997 to collect committed capital called from the private limited partners and not received. Further, the Company will remove any partners failing to respond to any capital call in a timely manner from its list of Institutional Investors and their corresponding unfunded commitment from its Regulatory Capital and provide written notice of such event to the SBA.

App. 243. We disagree. The appellants ignore the Haskins Letter's clear directive to "collect committed capital." This directive is consistent with the SBA's unequivocal representations to ATP, prior to the Haskins Letter, that it did not consent to, nor plan to consent to, the release of limited partners from their capital contribution obligations. Further, the instruction to remove defaulted partners from the list of institutional investors and exclude defaulted commitments from the regulatory capital does not constitute permission to terminate the partners' right to make further capital contributions. Instead, this portion of the Haskins Letter reiterates Haskins's March 30, 2001 direction to SBICs to report any changes in the status of its unfunded commitments and regulatory capital. That letter explains that "[m]isstatements of Regulatory Capital can be a violation of Federal law and subject to criminal prosecution and civil penalties." App. 418. Requiring

8

Acorn to report accurately the status of its regulatory capital does not constitute consent to release defaulted partners from their obligations.

Second, the appellants contend that Mead verbally consented to Torkelson's proposal to invoke Section 3.4.2. on June 25, 2001. We reject this argument. The LPA does not permit the SBA to provide verbal consent. Section 5.2.3. requires "prior written" consent before the partnership enters into "any agreement . . . release or settlement with any Partner or take[s] any action under any provision of the Agreement, which defers, reduces, or terminates the obligations of any such Partner to make contributions to the capital of the Partnership." App. 133. Thus, the appellants' second basis for consent fails as a matter of law.

Third, according to the appellants, the SBA gave implied consent when it failed to comment on Torkelson's email to Mead on June 22, 2001. Assuming, without deciding, that Torkelson's email was valid notice under the terms of the Agreement, Haskins's letter of July 20, 2001[4] served as a timely rejection of Torkelson's proposed action.

We hold that the appellants have failed to adduce evidence that establishes a genuine issue as to whether the SBA consented to their release from their capital contribution obligations.

B.

---

[4]In his July 20, 2001 letter, Haskins wrote, "Please be advised that SBA does not consent to the release or termination of any Acorn partner's obligation to contribute capital to Acorn." App. 436.

The appellants argue that the District Court erred in concluding that there were no disputed material facts with respect to the appellants' affirmative defenses.[5] The District Court rejected the appellants' affirmative defense that Acorn's antecedent breach of the parties' agreement relieves them of any obligation to pay the final capital call. "When there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement." Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990). The appellants assert that Acorn breached a material obligation to comply with all applicable laws and SBA regulations.

The LPA expressly provides that, upon the SBA's imposition of restricted operations, limited partners are required to contribute "any amount of their respective Commitments not previously contributed to the Partnership, [and] the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement . . . ." App. 132 (emphasis added). Furthermore, 13 C.F.R. § 107.1820(f)(3) provides the SBA with authority to require all commitments to be funded upon the occurrence of any restricted operations condition.[6] The SBA placed Acorn in restrictive operations as of

_____

[5]The appellants present arguments in support of three of the nine affirmative defenses that they originally asserted and that the District Court rejected. They have waived all other affirmative defenses on appeal. See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . .").

[6]The SBA Annex PS, which was incorporated into the Agreement, provides in Section 4.1(b) that the "Partners hereby consent to the exercise by the SBA of all of the rights of the SBA under 13 C.F.R. § 107.1820 and agree to take all actions which the SBA may require in accordance with 13 C.F.R. § 107.1820." App. 327

July 15, 2002. App. 473. Having agreed to be bound by these terms, the appellants cannot now allege that their contribution of the final capital call was contingent upon Acorn's compliance with SBA regulations. Accordingly, we conclude that the District Court did not err in rejecting the appellants' antecedent breach defense.

The appellants also argue that the District Court erred by rejecting its affirmative defenses of election of remedies and promissory estoppel. We have considered these claims and are convinced that they are without merit. We reject them without further discussion.[7]

C.

The appellants argue that the District Court erred in awarding interest to the SBA on its judgments. Section 3.4.1 of the LPA provides that, in the event that a limited partner fails to make a required contribution,

> the General Partner may, in its sole discretion, elect to charge . . . interest at an annual rate equal to <u>ten</u> <u>percent</u> <u>(10%)</u> on the amount due from the date such amount became due until the earlier of (i) the date on which such payment is received by the Partnership or (ii) the date of any notice given to such Private Limited Partner by the General Partner pursuant to Sections 3.4.2., 3.4.3. or 3.4.5.

---

[7]The District Court held that even if the affirmative defenses had merit, the appellants "cannot use state or local laws to avoid their obligations of repayment and that the affirmative defenses would be contrary to SBA's preference in liquidation, to which all Defendants agreed." App. 17 n.5. Because we conclude that the appellants have failed to demonstrate a genuine issue of material fact with respect to their affirmative defenses, we need not address the District Court's alternative basis for rejecting the appellants' affirmative defenses.

App. 121 (emphasis in original). The appellants first argue that this provision does not authorize the District Court's award of ten percent interest because the award of interest lies within the sole discretion of the General Partner and the SBA is not Acorn's General Partner. This argument fails, as the District Court's Order for Operating Receivership granted SBA, as receiver, "all powers, authorities, rights and privileges heretofore possessed by the [General Partner] . . . ." App. 534.

Second, the appellants argue that because the General Partner gave notice invoking Section 3.4.2. on June 29, 2001, no interest could accrue after that date. The notice to which the appellants refer is the Action of Manager that Torkelson executed and sent to the appellants purporting to terminate their right to make additional capital contributions. However, we agree with the District Court that Torkelson's attempt to release the appellants from their capital contribution obligations was not valid because it was done without the consent of the SBA. Because Torkelson failed to invoke validly Section 3.4.2., the SBA is entitled to interest pursuant to Section 3.4.1. of the LPA, as ordered by the District Court.

D.

Finally, the appellants argue that there is a genuine issue as to the validity of the MSA, which provided that the exclusive remedy for delinquent capital contributions would be to terminate the right of ACI to make further capital contributions in accordance with Section 3.4.2. The District Court held that the MSA was invalid because, inter alia,

12

the SBA did not approve it as required by the terms of the LPA. We agree with this conclusion for the reasons set forth in the District Court's opinion.

IV.

For the foregoing reasons, we will affirm the order of the District Court.